**[J-71-2024]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| OMAR ALMUSA, M.D., | : | No. 25 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 342 CD |
| | : | 2022 entered on July 13, 2023, |
| v. | : | Affirming the Order of the Bureau of |
| | : | Professional and Occupational |
| | : | Affairs at No. 21-49-006529 entered |
| STATE BOARD OF MEDICINE, | : | on March 17, 2022 |
| | : | |
| Appellee | : | ARGUED:  October 10, 2024 |

**<u>OPINION</u>**

**JUSTICE DONOHUE**                    **DECIDED:  March 13, 2025**

Dr. Omar Almusa ("Almusa") appeals from the Commonwealth Court's determination that, despite a change in the law, he cannot seek reinstatement of his medical license from the State Board of Medicine ("Board") prior to ten years from the date of his felony drug conviction.  For the reasons discussed in this opinion, we reverse the Commonwealth Court's decision.

## I.    Background

In 2003, the Board granted Almusa a license to practice as a medical physician and surgeon in Pennsylvania.  Between 2014 and 2018, Almusa unlawfully distributed 39.6 grams of hydrocodone, a schedule II controlled substance,[1] outside the usual course of professional practice and not for a legitimate medical purpose.  On June 27, 2018,

---

[1]  21 U.S.C. § 812(2).

Almusa pleaded guilty to one count of unlawful dispensing and distributing a schedule II controlled substance; one count of conspiracy to unlawfully distribute a schedule II controlled substance; and one count of health care fraud.[2] On May 9, 2019, Almusa was sentenced to twenty-four months of imprisonment to be followed by three years of supervised release.

The Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act ("Drug Act")[3] prohibits:

> (14) The administration, dispensing, delivery, gift or prescription of any controlled substance by any practitioner or professional assistant under the practitioner's direction and supervision unless done (i) in good faith in the course of his professional practice; (ii) within the scope of the patient relationship; (iii) in accordance with treatment principles accepted by a responsible segment of the medical profession.

35 P.S. § 780-113(a)(14). It also provides as follows:

> (f) Any person who violates clause ... (14) ... of subsection (a) with respect to:
>
> * * *
>
> (2) Any other controlled substance or counterfeit substance classified in Schedule I, II, or III, is guilty of a felony and upon conviction thereof shall be sentenced to imprisonment not exceeding five years, or to pay a fine not exceeding fifteen thousand dollars ($15,000), or both.

35 P.S. § 780-113(f)(2). The parties do not dispute that Almusa's federal drug conviction qualifies as a felony in Pennsylvania, pursuant to Section 13(f)(2) of the Drug Act.

---

[2]  21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C); 21 U.S.C. § 246; 21 U.S.C. § 1347.

[3]  Act of April 14, 1972, P.L. 233, No. 64, *as amended* 35 P.S. §§ 780-101–780-144.

Under the Medical Practice Act of 1985 ("MPA"),[4] the Board is responsible for overseeing licensure of medical practitioners in the Commonwealth and this authority includes, inter alia, the granting and suspension of medical licenses.[5] Section 40(b) of the MPA, provides, in relevant part, as follows:

> **(b) Automatic suspensions.--** A license or certificate issued under this act shall automatically be suspended upon the ... conviction of an offense under the laws of another jurisdiction, which, if committed in this Commonwealth, **would be a felony under [the Drug Act]**. As used in this section the term "conviction" shall include a judgment, an admission of guilt or a plea of nolo contendere.

63 P.S. § 422.40(b) (emphasis added). Section 43(b), which concerns reinstatement of an automatically suspended medical license, sets forth the following:

> **(b) Reinstatement after felony conviction.--** Any person whose license, certificate or registration has been suspended or revoked because of a felony conviction under [the Drug Act], or similar law of another jurisdiction, may apply for reinstatement after a period of at least ten years has elapsed from the date of conviction … [.]

63 P.S. § 422.43(b).

Pursuant to the statutory scheme set forth above, on July 25, 2019, the Board issued a notice and order of automatic suspension to Almusa based on his conviction of a felony drug offense, and the Board suspended his license effective August 15, 2019 "for a period of at least [ten] years from the date of conviction under authority of [S]ections 40(b) and 43(b) of the [MPA]." Notice and Order of Automatic Suspension, 7/25/2019. The Board received no response or request for a hearing from Almusa. On November

---

[4] Act of December 20, 1985, P.L. 457, No. 112, *as amended* 63 P.S. §§ 422.1-422.53.

[5] *See* 63 P.S. § 422.22 ("Licenses and certificates; general qualification"); 63 P.S. § 422.40 ("Temporary and automatic suspensions"); 63 P.S. § 422.41 ("Reasons for refusal, revocation, suspension or other corrective actions against a licensee or certificate holder"); 63 P.S. § 422.42 ("Types of corrective action").

26, 2019, the Board issued a final order of automatic suspension, suspending Almusa's medical license for at least ten years. Final Order of Automatic Suspension, 11/26/2019. Almusa did not appeal the Board's November 26, 2019 order.

On July 1, 2020, the General Assembly enacted Act 53,[6] which, inter alia, redefined how licensing boards should consider criminal offenses.[7] *See* 63 Pa.C.S. §§ 3101-3118. Notably, Act 53 provides that "the addition of [Section 3113] … shall apply to official acts and matters, including disciplinary matters, related to the issuance of licenses, certificates, registrations or permits by licensing boards or licensing commissions beginning on or after [December 28, 2020.]"[8] Relevant here was the addition of a definition of "drug trafficking:"

> **(f) Drug trafficking.--**Notwithstanding any provision of law to the contrary, the provisions of the respective practice acts relating to felony drug convictions under the … [the Drug Act], or a conviction for an offense under the laws of another jurisdiction which, if committed in this Commonwealth, **would be a felony under [the Drug Act], shall only apply to an individual who has been convicted of a drug trafficking offense.** The licensing board or licensing commission may show, by a preponderance of the evidence, that the amount or weight of the controlled substance involved in a conviction meets the requirements for a drug trafficking offense.

---

[6] Act of July 1, 2020, P.L. 575, No. 53, effective December 28, 2020.

[7] Both houses of our General Assembly voted unanimously in favor of Act 53. *See* PA. GENERAL ASSEMBLY, *Details for House Roll Calls, Senate Bill 637,* https://www.legis.state.pa.us/CFDOCS/Legis/RC/Public/rc_view_action2.cfm?sess_yr= 2019&sess_ind=0&rc_body=H&rc_nbr=1452 (recording that there were 201-0 votes in favor) (last visited Nov. 26, 2024); PA. GENERAL ASSEMBLY, *Details for Senate Roll Calls, Senate Bill 637,* https://www.legis.state.pa.us/CFDOCS/Legis/RC/Public/rc_view_action2.cfm?sess_yr= 2019&sess_ind=0&rc_body=H&rc_nbr=1452 (recording that there were 50-0 votes in favor) (last visited Nov. 26, 2024).

[8] Act of July 1, 2020, P.L. 575, No. 53, § 5, effective December 28, 2020.

63 Pa.C.S. § 3113(f) (emphasis added) (footnote omitted). Section 3113(i) defines a "drug trafficking offense," as relevant here, as the illegal distribution of a controlled substance where the weight of the controlled substance is at least 100 grams. 63 Pa.C.S. § 3113(i). Because Almusa's criminal conduct involved the distribution of less than 100 grams of a schedule II controlled substance, the parties agree that his conviction does not constitute a drug trafficking offense as that term is defined under Section 3113 of Act 53.

Section 3113 went into effect on December 28, 2020. On April 8, 2021, Almusa filed a petition for reinstatement with the Board, and he also filed a motion to determine whether his conviction met the definition of drug trafficking under Act 53. The Board considered arguments without taking additional evidence.

On March 17, 2022, the Board granted Almusa's motion and determined that his conviction did not meet the definition of drug trafficking under Act 53; however, it denied his reinstatement. The Board viewed Almusa's request as the termination of the automatic suspension while also seeking reinstatement of his license. It concluded that Section 3113(f) does not apply retroactively to permit Almusa's reinstatement because his license was suspended before the effective date of Section 3113(f). The Board concluded that it could not apply the provision retroactively because the General Assembly did not clearly and manifestly intend that Section 3113(f) be given retroactive effect. Final Memorandum and Order, 3/17/2022, at 2-3 (citing 1 Pa.C.S. § 1926). The Board also explained that it "lacks discretion to impose a suspension for a period of less than ten years" under Section 43(b) of the MPA. *Id.* at 3 (citing *Khan v. Bureau of Pro. and Occupational Affs.*, 2017 WL 5580062 (Pa. Commw. Nov. 21, 2017)). The Board rejected Almusa's argument that Section 3113(f) permits him to seek reinstatement by treating reinstatement as a separate and distinct matter from his automatic suspension,

thereby applying the law prospectively following Act 53's enactment. *Id.* at 3-4. Accordingly, the Board denied Almusa's request to terminate his automatic suspension and reinstate his medical license.

Almusa appealed to the Commonwealth Court, and an en banc panel of the Commonwealth Court affirmed the Board's decision. *Almusa v. State Bd. of Med.*, 298 A.3d 547 (Pa. Commw. 2023). Before the Commonwealth Court, Almusa reiterated that he was not seeking to vacate or undo his original suspension; rather, he was seeking the reinstatement of his medical license based upon the plain language of Sections 40(b) and 43(b) of the MPA and Section 3113(f) of Act 53. Almusa argued that Section 3113(f) rendered Section 43(b)'s ten-year waiting period inapplicable to felony drug convictions not involving drug trafficking, and thus, on a prospective basis, he was permitted to seek the reinstatement of his medical license immediately rather than waiting ten years. *Id.* at 549.

The Commonwealth Court did not agree. It concluded that "the imposition of his suspension and the duration of his suspension" are one official Board action under Sections 40(b) and 43(b) of the MPA. *Id.* at 555. While it acknowledged that Section 40(b) does not contain a minimum or maximum suspension period, the Commonwealth Court reasoned that when Sections 40(b) and 43(b) are read together, they impose a ten-year automatic suspension for a felony drug conviction. Further rejecting Almusa's rationale, the Commonwealth Court highlighted that it has "repeatedly held that the Board 'does not have ... discretion under [Sections 40(b) and 43(b) of the MPA] to suspend [a licensee's] license for any period less than ten years.'" *Id*. (quoting *Galena v. Dep't of State Pro. and Occupational Affs.*, 551 A.2d 676, 678 (Pa. Commw. 1988) (citing *Denier v. State Bd. of Med., Bureau of Pro. & Occupational Affs.*, 683 A.2d 949, 953 (Pa. Commw. 1996); *Khan v. Bureau of Pro. & Occupational Affs.*, 2017 WL

5580062 (Pa. Commw. Nov. 21, 2017))). Relying on Section 1926 of the Statutory Construction Act, which provides that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly," the Commonwealth Court declined to impose Section 3113(f) retroactively. *Id.* at 555-56 (citing 1 Pa.C.S. § 1926). Ultimately, because the Board's suspension of Almusa's medical license under Sections 40(b) and 43(b) took place in 2019, before Section 3113 went into effect, the Commonwealth Court held that Section 3113(f)'s limiting of professional discipline to felony drug trafficking convictions did not apply to Almusa. *Id.* at 556.

President Judge Renee Cohn Jubelirer authored a dissenting opinion, joined by Judges Stacy Wallace and Patricia A. McCullough. *Almusa*, 298 A.3d at 556 (Cohn Jubelirer, P.J., dissenting). The dissent agreed with Almusa that although suspension and reinstatement under Sections 40(b) and 43(b) of the MPA are related, they "require separate official actions to be taken by the Board[,]" and are, therefore, separate actions. *Id*. at 558. As such, the dissent reasoned that "there is no retroactivity issue in applying" Section 3113(f) because the petition for reinstatement, upon which the Board officially acted, was filed after Section 3113(f) redefined what constitutes a felony conviction for automatic license suspension purposes. *Id*. In support of this position, the dissent looked to the United States Supreme Court's decision in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), observing that the High Court held that "[w]hen [an] intervening statute authorizes or **affects the propriety of prospective relief, application of the new provision is not retroactive**." *Almusa*, 298 A.3d at 559 (emphasis in original) (quoting *Landgraf*, 511 U.S. at 273).

The dissent also pointed out that in *Rose Corporation v. WCAB (Espada)*, 238 A.3d 551 (Pa. Commw. 2020), the Commonwealth Court noted that an exception to the rule of retroactivity exists "where the statute [in question] is merely procedural and **does**

**not alter any substantive rights**, in which case it may be retroactively applied, irrespective of whether the statutory amendment includes an express retroactivity clause." *Id*. at 560 (emphasis in original) (quoting *Rose*, 238 A.3d at 559). As it explained, Almusa maintains a property right in his medical license, even if that license is suspended, subject to reinstatement as provided in Section 43(b) of the MPA. *Id*. (citing *McGrath v. Bureau of Pro. & Occupational Affs., State Bd. of Nursing*, 173 A.3d 656, 665 (Pa. 2017)). "Allowing [Almusa] to seek reinstatement earlier than originally anticipated would not change that his license was suspended or whether he is entitled to a medical license as of the time he filed the Reinstatement Application." *Id*. Instead, the dissent opined that it would relate "to 'the method for enforcing' the right to a license that [Almusa] already has." *Id*. (quoting *Rose*, 238 A.3d at 559).

Lastly, under a plain language reading of the relevant provisions, the dissent reasoned that the "General Assembly intended to allow those whose licenses had been automatically suspended for felony drug convictions that no longer warrant consideration for discipline under Act 53 … to seek reinstatement before the [ten]-year period expires[.]" *Id*. at 562. Such an interpretation, the dissent reasons, effectuates the General Assembly's intent in passing Act 53, and also comports with the plain language of Section 43(b) of the MPA and Section 3113(f) of Act 53. To the extent this interpretation differs from that of the majority, moreover, the dissent observed that this would suggest the provisions are ambiguous. As those provisions are punitive, the dissent would look to the rule of lenity, which favors Almusa's position. *Id*. (citing 1 Pa.C.S. § 1928(b)(1); *Richards v. Pa. Bd. of Prob. & Parole*, 20 A.3d 596, 600 (Pa. Commw. 2011)).

Almusa filed a petition for allowance of appeal, which we granted to address the following issues:

> (1) Did the Commonwealth Court err when it concluded that Sections 40(b) and 43(b) of the [MPA], 63 P.S. §§

422.40(b) and 422.43(b), impose a minimum [ten]-year automatic suspension for a felony drug conviction and do not require distinct and separate [Board] actions?

(2) Did the Commonwealth Court err when it concluded that granting Dr. Almusa a reinstatement hearing would constitute a retroactive application of [Section 3113(f) of the Act of July 1, 2020, P.L. 575 (Act 53), 63 Pa.C.S. § 3113(f)]?

(3) Does the rule of lenity support granting Dr. Almusa a reinstatement hearing?[9]

*Almusa v. State Bd. of Med.*, 316 A.3d 617 (Pa. 2024) (per curiam).

## II.    Parties' Arguments

**Almusa's Arguments**

Although Almusa acknowledges that his automatic suspension was lawful when it was imposed, he maintains that Section 40(b) only authorized his automatic suspension for a felony Drug Act offense but did not authorize the Board "to impose a definite period of suspension." Almusa's Brief at 13. Separately, Section 43(b) provides that a licensee whose license is automatically suspended for a felony conviction under the Drug Act "may apply for reinstatement after a period of at least ten years has elapsed from the date of the conviction." *Id.* at 14 (citing 63 P.S. § 422.43(b)). He contends that "these statutory provisions are related, [but] they plainly implicate two separate and distinct Board actions." *Id.* To Almusa, Section 43(b) cannot be implicated until a licensee seeks reinstatement, and this means that the length of his suspension cannot be determined until he seeks reinstatement. *Id.* at 17. Further, he argues that Act 53 has redefined the scope of what constitutes a felony Drug Act conviction. Because his conduct is no longer considered a felony Drug Act offense under the law, he contends that Section 43(b) no

---

[9] Because we find no ambiguity in the language of the relevant statutes, we need not discuss the application of the rule of lenity. *See Commonwealth v. Lehman*, 311 A.3d 1034, 1048 n.20 (Pa. 2024) ("[T]he rule of lenity simply does not apply where … the statutory language is unambiguous[.]").

longer precludes him from seeking reinstatement of his license. *Id.* at 17. Relying on Act 53's change in the law, he contends that he is no longer subject to the ten-year waiting period set forth in Section 43(b) because he has not committed a "drug trafficking" offense as it is defined in Act 53. *Id.*

Moreover, Almusa argues that granting him a reinstatement hearing would not constitute a retroactive application of Act 53 because "[w]hen the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Id.* at 18 (quoting *Landgraf*, 511 U.S. at 273). This Court, he argues, also recognizes that "a statute does not operate retrospectively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment." *Id.* (quoting *Alexander v. DOT, Bureau of Driver Licensing*, 880 A.2d 552, 559 (Pa. 2005)). He clarifies that he is challenging the Board's failure to apply Act 53 "at the time he filed his petition for reinstatement." *Id.* There is no retroactivity to consider, he argues, because the length of an automatic suspension is determined at the time reinstatement is requested rather than at the time suspension is imposed under Section 40(b). *Id.* at 18-19. Because Act 53 "clearly implicates the reinstatement provision of Section 43(b)," Almusa argues that the General Assembly intended for the provision to apply to physicians seeking reinstatement. *Id.* at 20-21.

**Board's Arguments**

The Board asserts that the 2019 suspension order clearly suspended Almusa for ten years, and he never challenged it. Board's Brief at 6-7. It explains that Almusa had the right to challenge his 2019 suspension, but he simply failed to do so and cannot do so now. *Id.* at 8-9. However, it adds that, as the Commonwealth Court has held, when reading Sections 40(b) and 43(b) together, it has no discretion to impose a suspension less than ten years. *Id.* at 7 (citing *Denier v. State Bd. of Med., Bureau of Pro. and*

*Occupational Affs.*, 683 A.2d 949, 953 (Pa. Commw. 1996); *Khan v. Bureau of Pro. and Occupational Affairs*, 2017 WL 5580062 (Pa. Commw. Nov. 21, 2017)). Accordingly, the Board argues that "Almusa's attempt to extricate the ten-year term" from its 2019 automatic suspension order must fail. *Id.* at 9.

The Board views Almusa's request as a retroactive application of Act 53 and asserts that this cannot be done because the General Assembly never declared that the changes to the law were to be applied retroactively. *Id.* at 10 (citing 1 Pa.C.S. § 1926). Aside from being legally improper, the Board argues that applying Act 53 retroactively would affect Almusa's substantive rights and that when such rights are involved, the "applicable law must be that which is in effect at the time the cause of action arises." *Id.* at 10-11 (citing, inter alia, *Bell v. Koppers Co., Inc.*, 392 A.2d 1380 (Pa. 1978)). The Board asserts that the new legal consequence of Act 53 is that an individual convicted of a felony "drug trafficking offense" is subject to a ten-year automatic suspension, while those convicted of another (non-trafficking) felony Drug Act offense are not. *Id.* at 12. It notes that the term "drug trafficking offense" was not defined prior to the enactment of Act 53. *Id.* Thus, the Board argues that "[a] new term coupled with new licensure consequences" means new legal consequences. *Id.*

Further, the Board argues that Section 43(b), read in its totality, "defines the appropriate circumstances for securing reinstatement of a license and defines and regulates the rights of a license holder: the passage of ten years and significant progress in rehabilitation after a felony Drug Act conviction." *Id.* at 13-14. If Act 53 is applied retroactively, the Board argues that it would have to relate back to Almusa's 2019 conviction for a Drug Act felony and "give that conviction a legal effect that is different from that which it had under the law when the conviction and ten-year automatic suspension occurred." *Id.* at 15. The Board argues that if application of a statute is wholly

dependent upon and reclassifies the antecedent event, then the application should be considered retroactive. *Id.*

## III. Analysis

In this matter of first impression, we address the effect of Act 53 on reinstatements of licensure under the MPA. More precisely, we must determine whether application of Act 53 to reinstatement proceedings contravenes the principle that statutes are generally to be applied prospectively only. The question is one of statutory interpretation and is therefore a question of law. Our standard of review is de novo and our scope of review is plenary. *Commonwealth v. Giulian*, 141 A.3d 1262, 1266 (Pa. 2016).

Act 53 redefined how medical licensing boards consider certain criminal offenses. As relevant here, Act 53 made explicit that only those convicted of a "drug trafficking offense," as defined by Section 3113, could be subject to an automatic suspension under Section 40(b) and, by virtue of that suspension, be subject to the ten-year waiting requirement to seek license reinstatement under Section 43(b). The predicate for what triggers an automatic suspension did not change: a felony Drug Act offense. However, the General Assembly altered the relevant definitions so that the only felony drug convictions that constitute a felony Drug Act offense are those that are defined as drug trafficking offenses. 63 Pa.C.S. § 3113(f).

The parties do not dispute that Almusa's criminal conduct does not qualify as a drug trafficking offense as defined by Section 3113. Almusa's Brief at 9; Board's Brief at 12. However, it is likewise undisputed that prior to the enactment of Act 53 in 2019, the MPA mandated the automatic suspension of Almusa's medical license. Almusa is not challenging the validity of his suspension. Instead, Almusa is asking the Board to consider his reinstatement application in light of Act 53, the law in effect at the time of his application. It is Almusa's position that his automatic suspension in 2019 resulted from a

distinct proceeding and outcome mandated by the law in effect at the time of the suspension. Conversely, his application for reinstatement, itself a separate proceeding, is subject to the law in effect at the time his application is made. Because he was not convicted of a drug trafficking offense, Almusa contends that the Board must consider his application for reinstatement without regard to any passage of time between his suspension and application for reinstatement.

In construing statutory language, we must give effect to the Legislature's intent, and the plain language of the statute is the best indication. *In re. B.W.*, 250 A.3d 1163, 1171 (Pa. 2021); 1 Pa.C.S. § 1921(a). When considering the plain language, we examine the statutory text and give the words and phrases their common and approved usage. *Commonwealth v. Humphrey*, 283 A.3d 275, 289 (Pa. 2022). Further, when interpreting statutory language, we presume that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable, and that the Legislature intends for the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1), (2).

To resolve the ultimate question in this case, we must first decide whether automatic suspensions under Section 40(b) of the MPA are actions of the Board that are separate and distinct from reinstatements under Section 43(b).

Section 40(b) of the MPA, which appears under the provision entitled "Temporary and automatic suspension[,]" provides as follows:

> **(b) Automatic suspensions.--** A license or certificate issued under this act shall automatically be suspended upon the legal commitment to an institution of a licensee or certificate holder because of mental incompetency from any cause upon filing with the board a certified copy of such commitment, conviction of a felony under the [Drug Act],[] or conviction of an offense under the laws of another jurisdiction, which, if committed in this Commonwealth, would be a felony under [the Drug Act]. As used in this section the term "conviction" shall include a judgment, an admission of guilt or a plea of nolo contendere. Automatic suspension under this subsection shall not be

> stayed pending any appeal of a conviction. Restoration of such license or certificate shall be made as hereinafter provided in the case of revocation or suspension of such license or certificate.

63 P.S. § 422.40(b) (footnote omitted). Under Section 40(b), the mandatory Board action is the automatic suspension of a medical license. The use of the word "shall" demonstrates that the Board is required to automatically suspend a medical license once it is established that a licensee triggered one of the enumerated circumstances.[10] *See Oberneder v. Link Comp. Corp.*, 696 A.2d 148, 150 (Pa. 1997) ("By definition, 'shall' is mandatory.'"). These circumstances are commitment to an institution because of mental incompetency from any cause, a felony conviction under the Drug Act, or a felony conviction in another jurisdiction that would qualify as a felony under the Drug Act. The final sentence of Section 40(b) indicates that conditions to restore a license are expressly omitted from this provision and are set forth elsewhere.[11] *See McGrath*, 173 A.3d at 664 (construing a nearly identically phrased provision in the nursing licensing scheme to mean that "the insertion of the words 'hereinafter provided' … refers the reader to some later section of the Law for details on how restoration of a license is to be made …").

As the plain language reveals, the Board has no discretion whether to initiate this automatic suspension action, no requirement that it hold a hearing,[12] and no ability to

---

[10] *Compare* 63 P.S. § 422.40(a) (requiring notice and hearing within thirty days of a temporary suspension), *with* 63 P.S. § 422.40(b) (requiring the imposition of automatic suspension once the Board is informed that one of the enumerated predicates has been established).

[11] *Compare* 63 P.S. § 422.40(a) (mandating that temporary suspensions must be vacated by the Board within 180 days from the date of the temporary suspension), *with* 63 P.S. § 422.40(b) (directing that restoration of a license is set forth in an entirely separate provision).

[12] *See, e.g., Denier*, 683 A.2d 949 (holding, in the context of an automatic license suspension, "[a]n evidentiary hearing is not required by due process when no facts are at issue").

refuse to enter an order of suspension should the predicate be established. In sum, the Board's actions under Section 40(b) are limited to automatically suspending a medical license whenever proof of a predicate circumstance has been established.

Section 43(b) of the MPA appears under the provision entitled "Reinstatement of license, certificate or registration[,]" and sets forth the following:

> **(b) Reinstatement after felony conviction.-- Any person whose license, certificate or registration has been suspended or revoked because of a felony conviction under [the Drug Act], or similar law of another jurisdiction, may apply for reinstatement after a period of at least ten years has elapsed from the date of conviction.** The board may reinstate the license if the board is satisfied that the person has made significant progress in personal rehabilitation since the conviction such that his reinstatement should not be expected to create a substantial risk of harm to the health and safety of his patients or the public or a substantial risk of further criminal violations and if the person meets all other licensing qualifications of this act, including the examination requirement.

63 P.S. § 422.43(b) (emphasis added). Under Section 43(b), the permitted Board action is the reinstatement of a license that has been suspended as a consequence of a disqualifying felony Drug Act conviction. Such action may only take place at least ten years from the date of the disqualifying conviction. To trigger this process, the licensee submits an application for reinstatement. The Board must then determine whether the licensee has sufficiently demonstrated "significant progress in personal rehabilitation since the conviction" such that she is not at risk of harming the public. *Id.* After engaging in an individualized assessment, if the Board is satisfied that the evidence supports a conclusion that the licensee does not pose a substantial risk to the public, then it is within the Board's discretion to reinstate the medical license. 63 P.S. § 422.43(b). Under the MPA, an automatic suspension and reinstatement of a medical license are separate and

distinct official actions within the Board's authority.[13] Although the parties' arguments are primarily focused on the retroactive application of Section 3113(f), because automatic suspension and reinstatement are separate and distinct Board actions, the simpler question is whether Act 53, as written, applies to Almusa's reinstatement proceedings. We find that it does.

Act 53 provides that "the addition of [Section 3113] … shall apply to official acts and matters, including disciplinary matters, related to the issuance of licenses, registrations or permits by licensing boards or licensing commissions beginning on or after [December 28, 2020]."[14] The General Assembly clearly intended a broad application of Section 3113 to "official acts" of a licensing board. As discussed, reinstatement of a license under Section 43(b) is an official act of the Board that is separate and distinct from the act of the automatic suspension of a license. Given the breadth of the application of the amendment to official acts of the Board, reinstatement proceedings are subject to the requirement that only a drug trafficking conviction triggers the ten-year waiting period prior to seeking reinstatement.

Moreover, at a more granular level, if reinstatement pursuant to Section 43(b) of the MPA is "a disciplinary matter, related to the issuance of licenses … by [a] licensing board," then it is likewise true that the provisions of Section 3113, including its definition of a felony Drug Act conviction, apply to Almusa's reinstatement petition, which was filed on April 8, 2021. A "disciplinary matter" is defined in Act 53 as "[a] matter subject to a licensing board's or licensing commission's jurisdiction in which the licensing board or licensing commission has the authority to refuse, suspend, revoke or limit a license,

---

[13] Notably, the Board assigns the two proceedings separate case numbers. *See* Case No. 18-49-02138 (Automatic Suspension); Case No. 21-49-006529 (Reinstatement).

[14] Act of July 1, 2020, P.L. 575, No. 53, § 5, effective December 28, 2020.

registration, certificate or permit or to impose a civil penalty or other discipline under an act."  63 Pa.C.S. § 3102 ("Disciplinary matter").

In reinstatement proceedings, the Board has the authority to continue the discipline under the Act by refusing reinstatement if it concludes that the licensee has not made rehabilitative progress or that the licensee poses a substantial risk to the public.  63 P.S. § 422.43(b).  Accordingly, reinstatement under Section 43(b) is a disciplinary matter as defined in Act 53.  This also comports with the general disciplinary powers afforded to the Board under the MPA.  *See* 63 P.S. § 422.41(4) (explaining that "refus[ing]" "an application for a license or other authorization" falls within the Board's disciplinary authority).

The General Assembly made clear when enacting Act 53 that Section 3113 was to apply broadly to acts of licensing boards, which includes disciplinary matters, beginning on December 28, 2020.  Reinstatement under Section 43(b) is broadly an action of the Board and a disciplinary matter subject to that application date.

It is clear that at the time of the institution of the reinstatement proceeding in April 2021, Almusa was not suspended as a result of a drug trafficking offense and the ten-year waiting period attached to that conviction does not apply to him.  The clear language of Act 53 makes the amendment applicable to Almusa's reinstatement proceeding.  Thus, Almusa was entitled to consideration of his reinstatement petition by the Board.[15]

## IV.   Conclusion

For the foregoing reasons, the decision of the Commonwealth Court is reversed.

---

[15]  Almusa does not challenge the Board's authority in the reinstatement proceeding to take into account whether he is sufficiently rehabilitated so as not to create a substantial risk of harm to the public pursuant to the criteria set forth in Section 43(b) of the MPA. Consequently, we do not address whether Almusa is entitled to reinstatement without consideration of these factors, which, like the ten-year waiting period, are required as a result of a drug trafficking offense.

Chief Justice Todd and Justices Dougherty, Wecht, Mundy, Brobson and McCaffery join the opinion.